Dmitry Lapin, Esq. (pending admission *pro hac vice)*
dmitry@axenfeldlaw.com
Axenfeld Law Group, LLC
2001 Market Street Suite 2500
Philadelphia, PA 19103
917-979-4570

*Attorneys for Plaintiff Mark A. Johnson*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ALASKA**

| | |
|---|---|
| Mark A. Johnson<br><br>Plaintiff,<br><br>vs.<br><br>Barber & Associates LLC, and Jeff Barber, individually<br><br>Defendant. | Case No.: |

**COMPLAINT**

Plaintiff Mark A. Johnson ("Johnson"), by and through his undersigned counsel, brings this Complaint against Defendants Barber & Associates, LLC ("B&A") and Jeff Barber ("Barber") and hereby prays to this honorable Court for relief based on the following:

## INTRODUCTION

1. This action arises from the willful copyright infringement of Johnson's copyrighted and valuable photograph titled "Coastline dusk Alaska_AKC 381_MarkAJohnson" (the "Subject Photograph"). Johnson seeks to obtain injunctive relief against Defendants to stop their continuing infringement and prevent any further infringement to Johnson's copyrights. Defendants' acts of infringement have damaged Johnson and threaten to damage it further. Johnson seeks injunctive relief, declaratory relief, and damages for the full amount of Johnson's losses, as well as Defendants' profits, or if elected, statutory damages, as well as attorneys' fees, and costs pursuant to 17 U.S.C. §§ 504(c) and 505.

## THE PARTIES

2. Johnson is an individual residing in Kapaau, Hawaii.

3. Johnson is the author of the Subject Work and owns all copyrights thereto.

4. Defendant B&A is a limited liability company formed and existing under the laws of the state of Alaska, with its principal place of business in Anchorage, Alaska.

5. Upon information and belief, Barber is an individual residing in Anchorage, Alaska and is the managing member and majority owner of all shares/interest in and to B&A.

## JURISDICTION AND VENUE

6. This is an action for copyright infringement arising under the Copyright Act of 1976 (17 U.S.C. §§ 101 et seq. as amended).

7. This Court has subject matter jurisdiction over Johnson's copyright infringement claims under the Copyright Act of 1976 (17 U.S.C. §§ 101 et seq. as amended) and 28 U.S.C. §§ 1331 and 1338.

8. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1440 in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred and the judicial district wherein the Defendants can be found.

## THE SUBJECT PHOTOGRAPH

9. Johnson is a Brooks Institute of Photography graduate from Hawaii and specializes in outdoor and adventure photography with a special interest in waves and coastal scenes, nature, landscapes, travel, and sport photography. Johnson's photography is commercially valuable and has been used in global publications companies, including, National Geographic Adventure, Men's Health, Microsoft, Discovery Channel, General Mills, and Verizon.

10. Johnson authored the Subject Work in September of 2011, while traveling in Alaska.

11. A true and correct copy of the Subject Photograph is depicted below:



12. The Subject Photograph is wholly original, and Johnson is, and at all relevant times was, the holder of all rights, title, and interest to the Subject Photograph.

13. On October 24, 2011, Johnson registered the copyrights to the Subject Photograph under U.S. Copyright Registration No. VAu-1-082-056. Annexed hereto as **Exhibit A** is a true and correct copy of the copyright registration certificate.

//

//

## DEFENDANTS' INFRINGING CONDUCT

14. Johnson repeats, realleges, and incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

15. Defendant Barber is an attorney-at-law and provides legal services through B&A, a legal practice predominantly focused on personal injury related matters.

16. In order to promote, market, or otherwise advertise Defendants' legal services, Defendants created a website located at www.alaskainjury.com (the "Website"), wherein prospective clients can view information about Defendants, their practice areas, and other relevant information prior to rendering a decision as to whether to retain Defendants.

17. Defendants have owned, operated, and controlled the Website since at least June of 2015.

18. Defendants' Website includes a variety of photographs in order to draw the attention of Website viewers to different subpages of the Website.

19. Upon information and belief, Defendants retained the services of a third-party web developer to create the Website.

20. Upon information and belief, the third-party web developer embedded, uploaded, or otherwise caused the display of the Subject Photograph within the Website.

21. Directly below is a side-by-side comparison of the Subject Photograph (left) with the relevant portion of the Website containing the infringing copy of the Subject Photograph (right):






22. As demonstrated above, an exact or virtually identical copy of the Subject Photograph was incorporated within the Website.

23. The Subject Photograph was displayed on the Website in conjunction with the text "Slip, Trip and Fall Hazards" and "Barber & Associates have been helping Alaska slip-and-fall accident victims to recover compensation for their injuries for many years."

24. When viewers of the Website caused their mouse cursor to hover over the Subject Photograph, a button would appear with the text "Read More," and when clicked, directs the viewer to a subpage within the Website.

25. To this date, the Subject Photograph continues to be publicly displayed within another subpage of Website, namely https://www.alaskainjury.com/our-services/. Annexed hereto **Exhibit B** is a true, accurate, and timestamped screen capture of the relevant portion of the aforementioned subpage of the Website.

26. To this date, the Subject Photograph continues to be publicly displayed in connection with Defendants' Website within search engine results, such that users of the search engine are directed to https://www.alaskainjury.com/our-services/, where the Subject Photograph continues to appear. Annexed hereto **Exhibit C** is a true, accurate, and timestamped screen capture of the Subject Photograph, as displayed within Google search results.

27. Defendants commercially exploited the Subject Photograph without Johnson's authorization, consent, or knowledge.

28. The Subject Photograph was copied and displayed within the Website for the purpose of advertising and promoting Defendants' legal services.

29. Johnson discovered Defendants' unlawful exploitation of the Subject Photograph in April of 2023.

//

30. Through a third-party copyright enforcement company, Johnson first notified Defendants of their infringing conduct on April 20, 2023 (the “First Notice”).

31. From April of 2023, through July of 2023, the third-party copyright enforcement company would ultimately communicate with Barber via email and by telephone regarding this matter.

32. Barber disregarded Johnson’s enforcement efforts as illegitimate without any reasonable basis and continued to display Johnson’s photograph within the Website.

33. In September of 2023, and in the face of Defendants’ continuing infringement, Plaintiff then retained the services of legal counsel, who sent another correspondence to Defendants regarding Defendants’ infringement of Johnson’s copyrights to the Subject Photograph.

34. Upon information and belief, and in a telephone call in response to the Johnson’s September 2023 correspondence, Barber expressed his belief that Johnson’s prior counsel and/or their efforts to enforce Johnson’s valid copyright infringement claim were a “scam,” while refusing to provide any information regarding how the Subject Photograph was caused to be displayed within the Website.

35. Upon information and belief, and in a second telephone call following Johnson's September 2023 correspondence, Barber reiterated his unfounded belief that Johnson's prior counsel and/or their efforts to enforce Johnson's valid copyright infringement claim were "bogus," while also stating to prior counsel to "take whatever action is necessary."

36. Despite receiving the September 2023 correspondence from a licensed attorney and communicating with Johnson's prior counsel over the telephone regarding Defendants' continuing infringement, Defendants continue to commercially exploit and publicly display the Subject Photograph within the Website.

37. Johnson then retained new counsel, who attempted to once again amicably resolve this matter without judicial intervention.

38. Upon information and belief, Barber responded that he is unwilling to resolve this matter and that Johnson would have to file a lawsuit.

39. Defendants, with unequivocal knowledge of Johnson's copyrights to the Subject Work,  continue to commercially exploit the Subject Photograph and display the same within the Website.

40. Barber's conduct demonstrates that the infringement was knowing and willful.

41. Defendants have recklessly disregarded Johnson's copyrights to the Subject Photograph, sneered at Johnson's efforts to avoid litigation, and unjustifiably forced Johnson to litigate a straightforward case of copyright infringement.

42. Barber, as a licensed attorney, has engaged in a pattern of behavior that is unreasonable and unbecoming of a member of the legal profession. As a practicing attorney, Barber has the requisite knowledge and capacity to investigate credible legal claims, yet only offered baseless accusations against Johnson and his prior counsel, while failing to take the simple measure of removing, or causing the removal of, the Subject Photograph from the Website. Instead, Barber has in bad faith forced Johnson into costly litigation while disrespecting copyright law.

43. Upon information and belief, Barber did not investigate or confirm that Johnson's (a) Copyright Registration was valid by accessing and reviewing the U.S. Copyright Office's public database, (b) copyright enforcement company was a legitimate business, authorized to pursue valid copyright infringement claims, or (c) attorneys were licensed to practice law and were pursuing a valid copyright infringement claim.

44. Upon information and belief, Barber did not investigate or confirm whether Defendants possessed a license to commercially exploit the Subject

Photograph, but rather, elected to disregard Johnson's claims as illegitimate, without any reasonable fact or law to support the belief.

45. Upon information and belief, and prior to the First Notice, Barber knew that Defendants were not authorized to display the Subject Photographs.

46. Upon information and belief, Barber owns 91% of equity in B&A and is B&A's managing-member.

47. Upon information and belief, Barber maintains exclusive control, management, and operation of B&A.

48. Upon information and belief, Barber was directly responsible for retaining the services of a third-party to create the Website, which included the uploading and display of photographs, such as the Subject Photograph.

49. Upon information and belief, Barber maintains final decision-making authority over the contents of the Website, including which photographs will be displayed therein.

50. Upon information and belief, Barber possesses the authority to direct or otherwise cause the removal of photographs from the Website, including the Subject Photograph.

51. Barber, individually, and on behalf of B&A, elected to disregard Johnson's claims of copyright infringement and continues to permit the unlawful display of the Subject Photograph within the Website.

52. Despite knowledge of Johnsons' copyrights to the Subject Photograph, Barber repeatedly failed to remove the infringing copy of the Subject Photograph, or otherwise cause or direct the removal of the Subject Photograph.

53. Defendants' infringing acts, as alleged herein, were undertaken to reap the creative and artistic benefit and value of the Subject Photograph.

54. By failing to obtain Johnson's authorization to use the Subject Photograph, or to compensate Johnson for the use, Defendants avoided payment of license fees and other financial costs associated with obtaining permission to exploit the Subject Photograph, as well as the restrictions that Johnson is entitled to, and would place, on any such exploitation as conditions for Johnson's permission, including the right to deny permission altogether.

55. Defendants willfully misappropriated Subject Photograph, and with blatant and reckless disregard for Johnson's rights in and to the Subject Photograph, by failing to ensure its use of the same was proper, despite the fact that Defendants knew, or should have known, that Defendants were engaged in infringing activities.

56. As a result of Defendants' infringement of Johnson's copyrights in and to the Subject Photograph, Johnson has suffered significant damage, including but not limited, lost royalties and licensing revenue and has suffered dilution and diminishment of the value of the Subject Photograph.

**COUNT I**
**(COPYRIGHT INFRINGEMENT)**

57. Plaintiff repeats, realleges, and incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

58. Johnson is the sole owner of the Subject Photograph and holds a valid copyright registration in accordance with the United State Copyright Act.

59. The Subject Photograph is copyrightable subject matter under 17 U.S.C. §102(a).

60. Johnson has complied in all respects with the provisions and requirements of the Copyright Act.

61. Prior to the acts complained of herein, Johnson duly registered the copyrights in and to the Subject Photograph with the United States Copyright Office.

62. Johnson has exclusive rights under 17 U.S.C. §106 to reproduce, prepare derivative works of, distribute copies of, and publicly display the Subject Photograph.

63. Upon information and belief, Defendants, and each of them, had access to the Subject Photograph after the same was distributed to them by one or more third parties contracted to create the Website.

64. Access is also established by the striking similarity and/or identicality between the Subject Photograph and the relevant photograph exploited by Defendants, precluding any possibility of independent creation.

65. Defendants, and each of them, permitted third parties to view the Subject Photograph on at least two subpages within the Website.

66. Defendants, and each of them, permitted third parties to view the Subject Photograph through search engine results, e.g., Google.

67. Upon information and belief, members of the public viewed the Subject Photograph through their individual search engine results.

68. Upon information and belief, members of the public viewed the Subject Photograph on a webpage within the Website.

69. The copy of the Subject Photograph appearing within the Website is an identical, or virtually identical copy of the Subject Photograph.

70. Defendants' conduct violates Johnson's exclusive rights as copyright owner to the Subject Photograph.

71. As a result of Defendants' conduct, as alleged herein, Johnson has suffered damages, in an amount to be established at trial.

72. Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Work. As such, Johnson is

entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Johnson's rights in the Subject Photograph, in an amount to be established at trial.

73. Defendants have committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00). Within the time permitted by law, Plaintiff will make his election between actual damages and statutory damages.

74. Defendants' infringing conduct has also caused and is causing substantial and irreparable injury, in an amount not capable of determination, and unless restrained, will cause further irreparable injury, leaving Johnson with no adequate remedy at law.

75. Plaintiff claims all damages and remedies available under 17 U.S.C. §§504 and 505.

**<u>COUNT II</u>**
**(VICARIOUS LIABILITY)**

76. Plaintiff repeats, realleges, and incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

77. In the alternative, Defendants, and each of them, are vicariously liable for the direct infringement alleged herein because Defendants had the right and

ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

78. Defendants, and each of them, have full control and final decision-making authority over the content of any marketing, advertising, or promotional material, including the Website.

79. Defendants, and each of them, maintain a right and practical ability to stop or limit the direct infringement of third party website developers, yet declined to do so, namely that Defendants; (a) had the ability to review, approve, decline, or otherwise supervise the creation of marketing, advertising, and promotional material created for Defendants benefit, including but not limited to the Website; and/or (b) controlled the Website and had the practical ability to remove content, including Subject Photograph, or otherwise cause the removal of content, including the Subject Photograph.

80. Defendants, and each of them, have the right and authority to control the third-party website developer, direct the developer adjust components of the Website, e.g., color scheme, layout, etc., and to otherwise cause the third-party website developer to remove any content from the Website for any reason, including the removal of the Subject Photograph.

81. By commercially exploiting the Subject Photograph, Defendants failed to exercise their right and ability to stop or limit infringing behavior.

82. Defendants, and each of them, failed to perform any due diligence concerning the Subject Photograph, whether it was available for commercial exploitation, and/or whether a license is required.

83. Defendants had an obvious and direct financial interest in the unlicensed copying, reproduction, distribution, display, and exploitation of the Subject Photograph because the Subject Photograph was used to promote, market, and advertise Defendants and their businesses, draw relevant individuals to subpages within the Website, and ultimately generate revenue.

84. Defendants' subpages within the Website are designed to market Defendants' legal services, with the goal that viewers of the subpages ultimately retain Defendants' services.

85. Upon information and belief, the Subject Photograph was incorporated into the Website as part of a concerted search engine optimization strategy to increase Defendants' internet traffic and search result rankings, with the goal of increasing Defendants' revenues.

86. Upon information and belief, the Subject Photograph was tagged with the text 'Slip, Trip and Fall Hazards' to optimize search results. The goal was for Defendants' subpage on 'Slip, Trip and Fall Hazards,' along with the Subject Photograph, to rank higher in search results when a person in Alaska searches for

terms like 'slip and fall attorney' or related keywords, thereby increasing traffic to the Website.

87. Defendants also benefit from any increase in the value of the www.alaskainjury.com domain name due to the third-party developer's infringement of the Subject Photograph, as the resulting increase in web traffic enhances the domain's value as a business asset.

88. The Subject Photograph served as a "draw" for Defendants' business and attracted the attention of prospective clients.

89. Defendants, and each of them, directly benefit from potential or actual increase of revenues spurred by the use of the Subject Photograph, including, but not limited to, drawing in potential clients and increased web traffic as the Subject Photograph was used as part of Defendants' search engine optimization strategy.

90. Barber, as the sole managing-member of B&A, with 91% equity in B&A, had a direct and obvious financial interest in the unlicensed copying, reproduction, distribution, and display of Subject Photograph because all revenues flow directly to Barber.

91. Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Work. As such, Johnson is entitled to disgorgement of Defendants' profits directly and indirectly attributable

to Defendants' infringement of Johnson's rights in the Subject Photograph, in an amount to be established at trial.

92. Defendants have committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00). Within the time permitted by law, Plaintiff will make his election between actual damages and statutory damages.

93. Plaintiff claims all damages and remedies available under 17 U.S.C. §§504 and 505.

**COUNT III**
**(Contributory Copyright Infringement)**

94. Plaintiff repeats, realleges, and incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

95. In the further alternative, Defendants, and each of them are contributorily liable for copyright infringement of Johnson's rights in, and to, the Subject Photograph.

96. At all relevant times, Defendants, and each of them, knew or had reason to know that the commercial exploitation of the Subject Photograph within the Website was unlawful.

97. At the very least, Defendants acquired actual knowledge that the Subject Photograph was being commercially exploited within the Website after receiving Johnson's First Notice, alerting Defendants to the infringement.

98. With specific knowledge of infringing activity within the Website, Defendants caused the Subject Photograph to be stored and/or made accessible to the public through servers associated with Defendants and the Website.

99. Defendants materially contributed to the infringing conduct by storing the unlawful copy of the Subject Photograph on servers associated with the Defendants and the Website.

100. Defendants, and each of them, induced, caused, or materially contributed to the direct infringement of the Subject Photograph.

101. Defendants, and each of them, failed to stop the display of the Subject Photograph after acquiring specific knowledge that Defendants' exploitation of the Subject Photograph was infringing.

102. Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Work. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

103. Defendants have committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00) per infringement. Within the time permitted by law, Plaintiffs will make their election between actual damages and statutory damages.

104. Plaintiff claims all damages and remedies available under 17 U.S.C. §§504 and 505.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants, and each of them, as follows:

A. that the Court enter judgment against Defendants setting forth that Defendants have willfully infringed Plaintiff's federally registered copyrights to the Subject Photograph as contemplated by 17 U.S.C. §504(c)(2);

B. alternatively, that the Court enter judgment against Defendants setting forth that Defendants have infringed Plaintiff's federally registered copyright to the Subject Photograph, pursuant to 17 U.S.C. § 501;

C. that Defendants and their respective agents, officers and servants be enjoined from displaying, distributing, copying, or otherwise commercially exploiting the Subject Photograph;

D. that the Court order an impounding all unauthorized material that bears infringing copies of the Subject Photograph in the possession or control of Defendants pursuant to 17 U.S.C. §503(a)(1)(A), and ordering destruction of all unauthorized copies of the Subject Photograph, pursuant to 17 U.S.C. §503(b);

E. that Plaintiff be awarded all profits of Defendants plus all losses of Plaintiff, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages for willful infringement as available under 17 U.S.C. § 504(c);

F. that Plaintiff be awarded their attorneys' fees as available under 17 U.S.C. § 504(c) or other applicable statute;

G. that Plaintiff be awarded pre- and post-judgment interest as allowed by law;

H. that Plaintiff be awarded the costs of this action; and

I. that Plaintiff be awarded such further legal and equitable relief as the Court deems proper.

PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE PURSUANT TO FED. R. CIV. P. 38 AND THE 7TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Respectfully submitted,

Date: September 27, 2024

/s/ Dmitry Lapin
Dmitry Lapin, Esq. (pending admission
*pro hac vice)*
dmitry@axenfeldlaw.com
Axenfeld Law Group, LLC
2001 Market Street Suite 2500
Philadelphia, PA 19103
917-979-4570

*Attorneys for Plaintiff*